HALL, Judge.
This appeal (No. 1514) and an appeal from the First City Court of New Orleans in the matter entitled “Excel Insurance Company v. Kleindorf, La.App., 167 So.2d 407,” were consolidated for hearing in this Court since both suits arose out of the same automobile accident. A separate opinion is being handed down in the latter matter.
The instant appeal was taken by defendants from a judgment of the Civil District Court for the Parish of Orleans which awarded plaintiff, Gerald P. Ganu-cheau, a total of $2,085.05 for personal injuries and property damage and which awarded New Orleans Public Service Inc., Intervenor, the sum of $365.01 for damage to a light standard.
The amount of damages is not at issue. The sole issue is liability.
The accident which gave rise to this litigation was the second of two separate automobile collisions which took place on the Wisner overpass in the city of New Orleans around midnight January 9, 1962 in freezing weather. The collisions occurred approximately a half-hour apart, and the first collision is important to the extent that it throws light on the conditions prevailing on the overpass at the time. We also have the benefit of the testimony of some of those who were involved in the earlier accident.
Wisner overpass is a vehicular overpass consisting of two VZi/i lanes for the accommodation of “out-bound” traffic or traffic going in the direction of the lake, and two 12W lanes for “in-bound” traffic or traffic going in the direction of the central business district. The out-bound lanes are *405 ■divided from the in-bound lanes by a four foot concrete “island” or neutral ground which raises 11" above the roadways. Light standards belonging to New Orleans Public Service Inc. are situated in the middle of the neutral ground at 121' intervals throughout the length of the overpass.
Both collisions occurred on the in-bound roadway. The first accident occurred at approximately midnight of January 9, 1962 when Mr. Robert Brehm was driving home from a party proceeding from the lake towards the city. He drove up the overpass, and, upon reaching the top, encountered severe icing of the road and lost control of his car. The vehicle went into a skid and did not come to a stop until it had almost reached the bottom of the overpass on the city side. Mr. Brehm testified that the roadway leading up the overpass was in good condition and he had no trouble in ascending it. It was freezing cold but he did not have any reason to anticipate ice on the •overpass. When he hit the ice he was driving between 25 and 30 miles per hour. After his car came to a stop, but before he could get out of it, a car coming behind him crashed into the side of his vehicle. Mr. fBrehm’s wife, who was riding in the car with him, testified to the same effect. She •didn’t know how fast they were going when they hit the ice but thought it was about 25 miles per hour. She confirmed the fact that they encountered no trouble until they came to the top of the overpass.
Mr. William J. Nelson, a passenger in the automobile which struck Mr. Brehm’s car, testified that they, too, had no trouble at all going up the overpass but when they reached the top it was completely iced and Mr. Gomila, the driver, lost control of the car. They were travelling about 15 miles per hour but skidded and slipped ■down the overpass without any chance of .avoiding the Brehm car.
The next car to come over the overpass was that of the plaintiff, Mr. Gerald P. Ganucheau. He testified that he had been working late at the Pan American Life Insurance Company on Canal Street. He drove out Canal Street and into Canal Boulevard and drove on Canal Boulevard to Harrison Avenue, then turned right on Harrison Avenue, went through City Park and onto Wisner Boulevard. He turned right on Wisner Boulevard toward the city and proceeded toward the overpass. Although the weather was extremely cold he testified that he did not drive any slower than normal. He was proceeding at the maximum legal speed — 20 miles per hour on undivided streets and 35 miles per hour on boulevards.
Ganucheau had no trouble with ice going up the overpass. He testified that the road conditions were “fine” on the up-grade portion and that he had no reason to anticipate ice; that everything appeared normal as he went up. As he reached the top of the overpass he noticed the two cars involved in the previous collision “about two-thirds down the ramp” and just at that moment he struck the ice and started skidding. The ice started at the top and continued all the way down the city side downgrade of the overpass. He testified that he was travelling only 10 to 15 miles per hour when he hit the ice but that he slipped and skidded 200' until his car came to rest at a 30° angle with its rear against the neutral ground and its front pointing towards the outside railing of the inbound roadway. As he got out of the car some unidentified person came up the outbound roadway on foot and asked him not to drive his car down because the police were sending a tow-wagon to get the cars off the overpass. He noticed a truck driven by Mr. John P. Helfin (Helpin) approaching from the direction of the lake, and realizing the danger of the ice, he went to the top and flagged Mr. Helfin down. After talking to Helfin he returned to his car and sat waiting for the tow-wagon.
No one stayed at the top of the overpass to warn oncoming traffic. Helfin, being forewarned, was the only driver who did not lose control of his vehicle. Helfin had driven up the overpass at 15 miles *406 per hour in second gear because his engine was “bucking”. Helfin parked his truck at the top of the overpass in the right traffic lane close alongside, and parallel to, the outside railing but did not get out of the cab.
Helfin and Ganucheau sat in their respective vehicles approximately IS minutes when an automobile driven by the defendant, Kleindorf, came along.
Kleindorf had not encountered any difficulty on the streets that day. He testified that the condition of the overpass was “fine” going up and that he had no trouble controlling his vehicle until he reached the top. He was travelling between 30 and 35 miles per hour and when he hit the ice he applied his brakes and his car went completely out of control. He sideswiped Helfin’s truck and continued on slipping and sliding down the overpass and skidded sideways into Ganucheau’s parked vehicle causing personal injuries to Ganucheau and considerable damage to his car. Klein-dorf’s vehicle then either itself hit, or pushed Ganucheau’s car into, a Public Service light standard further down the overpass, knocking it down.
The District Judge held that defendant, Kleindorf, was guilty of negligence in driving his car up over the overpass at the rate of 30 to 35 miles per hour and that his speed was the proximate cause of the accident.
Defendants contend that Kleindorf was not guilty of any negligence, and alternatively that Ganucheau was guilty of contributory negligence in failing to warn oncoming cars of the dangerous condition at the top of the overpass. They further contend that Ganucheau assumed the risk of injury by remaining in his car.
Since Kleindorf was driving within the legal speed limit his rate of speed was not negligence per se. Therefore the question to be decided is whether the circumstances shown by the record were such as to indicate to a reasonably prudent person that a speed of 30 to 35 miles per hour was not safe for traversing the overpass at the time; of the accident.
The weather was freezing cold. It had rained earlier in the evening but Helfin was the only witness who had encountered any slippery road conditions anywhere that day or that night. He testified that it was “kind of slippery”, “not heavy but light”,, as he drove on Veterans Highway and on Harrison Avenue on the way to the overpass. Ganucheau, however, had traversed'. Harrison Avenue just ahead of Helfin and had noticed no ice and no slippery road' conditions. None of the other witnesses, for either side had encountered any ice or bad road conditions on the way to the overpass or anywhere else.
The testimony of these witnesses is overwhelming to the effect that the road conditions going up the overpass were fine and', that it was not until they actually drove onto the ice at the top that they realized the-hazard. Both Mr. Brehm and Mr. Ganu--cheau testified that they had no reason to-anticipate ice on the overpass. None of' the other witnesses testified to the contrary...
The District Judge seemed to lay stress-; on the fact that Mr. Nelson testified “it was-beginning to sleet as I remember it” as the-vehicle in which he was riding went up the-overpass. Helfin also testified that “it felt, like sleet”. Kleindorf denied that it was-, sleeting and none of the other witnesses-, testified that they encountered either rain-, or sleet.
We do not think that the evidence preponderates to the effect that it was sleeting" at the time, but assuming that it was beginning to sleet we see no reason for the-defendant to have anticipated encountering any difficulty on the overpass. We are of" the further opinion that there was nothing" to indicate to him that his speed of 30 to. 35 miles per hour was unsafe for traversing:' the overpass.
*407 It is dear that after Kleindorf encountered the ice at the top of the overpass there was nothing' he could do to control his car. Even Ganucheau’s car which was going only 10 to 15 miles an hour, and the Nelson •car travelling 15 miles per hour, went completely out of control when they struck the ice.
Plaintiff contends that Kleindorf was not keeping a proper lookout and failed to ■see the Helfin truck parked at the top of •the overpass. For some unknown reason Kleindorf testified that he did not see and did not remember sideswiping the truck while fully admitting seeing and striking plaintiff’s car. The truck was in full view of anyone coming up the overpass. All of its lights including three tail lights, were burning and the overpass was well lighted. However, it is clear from all of the testimony that under normal conditions Klein-dorf could have passed the truck on the left and could also have avoid Ganucheau’s car without stopping. There was nothing unusual about a truck being parked on the ■side of the overpass. Ganucheau testified that anyone coming up the overpass would have approached the truck in “a casual manner”. Kleindorf was travelling in the left lane when he encountered the ice and the reason he sideswiped the truck was because his car went out of control. Klein-dorf’s failure to see the truck, if he indeed failed to see it, was neither the cause of his hitting the truck nor the cause of hitting Ganucheau’s car.
We find nothing in the record which indicates to our minds that the defendant was guilty of any negligence. For this reason it is unnecessary for us to discuss •contributory negligence or assumption of risk on the part of plaintiff.
For the foregoing reasons the judgment ■appealed from is reversed and judgment is mow rendered in favor of defendants, Samuel Kleindorf and Security Insurance Company of New Haven, and against plaintiff, Gerald P. Ganucheau, and New Orleans Public Service Inc., Intervenor, dismissing said plaintiff’s and said intervenor’s demands at their costs. Costs of this appeal to be borne by plaintiff and intervenor.
Reversed and rendered.